UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WESTCHESTER FIRE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) 2:05-CV-01417-PMP-RJJ<br>) |
| v. | )<br>) ORDER |
| PHIL MENDEZ, dba PROFESSIONAL AIRCRAFT LINE SERVICE, | )<br>) |
| Defendant. | )<br>) |
| NORTHWEST AIRLINES, INC., | )<br>) |
| Intervenor. | ) |

Presently before the Court is Intervenor Northwest Airlines, Inc.'s ("NWA") Motion for Summary Judgment (Doc. #162), filed on February 23, 2010. Plaintiff Westchester Fire Insurance Company ("Westchester") filed an Opposition (Doc. #170) on March 23, 2010. NWA filed a Reply (Doc. #172) on April 9, 2010.

Also before the Court is Westchester's Motion to Strike NWA's Motion for Summary Judgment (Doc. #167) and Westchester's Motion for Summary Judgment (Doc. #168), filed on March 23, 2010. NWA filed an Opposition (Doc. #171) to the Motion to Strike and an Opposition (Doc. #173) to the Motion for Summary Judgment on April 9, 2010. Westchester filed a Reply (Doc. #174) to the Motion to Strike and a Reply (Doc. #175) to the Motion for Summary Judgment on April 19, 2010.

///

# I. BACKGROUND

Defendant Phil Mendez ("Mendez") owned Professional Aircraft Line Services ("PALS"), an aircraft maintenance company, providing on-call maintenance services to NWA at McCarran International Airport. (NWA's Mot. for Summ. J. [Doc. #162], Ex. A at 1, Ex C at WFIC - 0229, Ex. Z at 2.) Mendez operated under an Airport Owners and Operators General Liability Policy ("Policy") issued by Westchester which had $5 million worth of Hangarkeepers Liability coverage. (Id., Ex. C at 8.) The Policy provided, in relevant part,

> Section V - Conditions
> . . .
> 2. Duties In The Event of Occurrence, Offense, Claim or Suit.
>     a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim . . . .
>     b.  If a claim is made or "suit" is brought against any insured, you must:
>         (1) Immediately record the specifics of the claim or "suit" and the date received; and
>         (2) Notify us as soon as practicable.
>     You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>     c.  You and any other involved insured must: . . .
>         (3)  Cooperate with us in the investigation, settlement or defense of the claim or "suit" . . . .
> 3. Legal Action Against Us.
>     No person or organization has a right under this policy: . . .
>     b.  To sue us on this policy unless all of its terms have been fully complied with.

(Id. at 15-16.)

On February 6, 2002, a PALS employee failed to correctly engage the braking system on a NWA aircraft and the plane rolled down an embankment, resulting in physical damages and loss of use of the aircraft, costing NWA more than $10 million. (Id., Ex. Z at 1-3.) Westchester first was notified of the accident by NWA on November 4, 2003, over twenty-one months after the accident. (Id., Ex. F.) On February 4, 2004, Westchester delivered a "Reservation of Rights and Notice of Possible Excess Judgment" advising

PALS what obligations were required under the Policy, including the notice and cooperation obligations. (NWA's Mot. for Summ. J. [Doc. #101], Ex. 9.) Mendez made assurances that he would provide Westchester with documents absolving PALS of any liability. (NWA's Mot. Mot. [Doc. #162], Ex. E at 277-78.) However, Mendez never provided the documents to Westchester and after May 2004 Westchester adopted a "sit and wait" approach to the claim. (Id., Ex. I.) NWA informed Westchester in June 2004 of the possibility that NWA would commence litigation against Mendez and Westchester responded "do what you got to do." (Id., Ex. R at 57.)

NWA served Mendez with a complaint on October 1, 2004, and Mendez did not answer NWA's complaint or otherwise appear. (Id., Ex. S, Ex. Z at 3.) On November 15, 2004, NWA notified Westchester of the Minnesota lawsuit against Mendez and informed Westchester that NWA intended to move for a default judgment against Mendez. (Id., Ex. Q.) Westchester did not respond to NWA, and issued a denial of coverage letter to Mendez on November 24, 2004. (Id., Ex. U.) Westchester cited Mendez's failure to cooperate with Westchester's investigation of the claim and failure to give timely notice of the NWA lawsuit in Minnesota as reasons for the denial of coverage. (Id.) NWA moved for default judgment against Mendez on December 31, 2004, which the Minnesota court granted on January 10, 2005, in the amount of $10,608,673.00. (Id., Ex. Y.)

NWA domesticated the Minnesota Judgment in Nevada, and Mendez hired an attorney to evaluate his options. (Id., Ex. AA at 8.) On October 25, 2005, Mendez wrote to Westchester requesting that Westchester provide coverage and threatening legal action if Westchester failed to comply. (Id., Ex. BB at 1.) In the meantime, NWA agreed to discontinue collections against Mendez as long as he kept NWA apprised of his attempts to have Westchester cover his claim. (Id., Ex. AA at 16.)

Westchester rejected Mendez's request for indemnification and instead offered to hire an attorney for him to attempt to vacate the default judgment. (Id., Ex. CC at 1.)

3

Westchester made this offer contingent on the right to seek reimbursement of defense costs regardless of the result of the attempt to vacate the default judgment. (Id.) Mendez's attorney researched the possibility of vacating the Minnesota judgment and determined that there were not "sufficient grounds to file anything." (Id., Ex. AA at 10.) Thus, Mendez's attorney decided to try and negotiate a settlement with NWA. (Id. at 16.)

On December 1, 2005, Westchester filed this diversity action seeking a declaratory judgment that it owes no duty to indemnify Mendez because Mendez breached his duties under the Policy by failing to give notice of the accident or of the subsequent lawsuit against him by NWA. (Compl. [Doc. #1] at 8-9.) NWA moved to intervene in this action to protect its interests in the proceeds of the Policy to satisfy the default judgment against Mendez in Minnesota. (Mot. to Intervene [Doc. #9] at 1-2.) This Court granted NWA's motion to intervene despite NWA's failure to file a pleading required by Federal Rule of Civil Procedure 24. (Order [Doc. #18].)

This Court rendered a default judgment against Mendez for failure to meaningfully participate in the litigation against him. (Order [Doc. #126] at 6-7.) Additionally, the Court held that the default judgment against Mendez was binding against NWA because NWA voluntarily chose to intervene and could not be exempt from the default judgment against Mendez. (Id. at 7-8.)

With respect to NWA's original motion for summary judgment, the Court held that while NWA failed to file a pleading in compliance with Rule 24(c), the Motion to Intervene adequately described NWA's claim. (Id. at 9.) The Court thus treated the Motion to Intervene as a pleading under Rule 24(c) defining the scope of NWA's intervention. (Id.) The Motion to Intervene did not refer to a direct claim against Westchester, but rather defined NWA's interest as protecting its interests in any proceeds Westchester may owe Mendez under the Policy. (Id. at 9-10.) Therefore, this Court denied NWA's motion for summary judgment based on a third-party beneficiary theory of liability because the theory

4

involved a direct claim against Westchester and exceeded the scope of this litigation. (Id.)

NWA appealed and the United States Court of Appeals for the Ninth Circuit reversed and remanded, holding that the default by Mendez cannot deny NWA the chance to defend against Westchester's claim for declaratory relief. (Notice of Appeal [Doc. #130] at 1-2); Westchester Fire Ins. Co. v. Mendez, 585 F.3d 1183, 1190 (9th Cir. 2009). In pertinent part, the Ninth Circuit held,

> Westchester argues that Northwest cannot prevail against such a claim, because Mendez failed to give proper notice of the claim to Westchester, as required under the policy. Perhaps that will turn out to be the conclusion. But that was not the basis for the judgment entered here by the district court. The district court held Mendez in default for failure to appear for his deposition. The default and the subsequent judgment did not result from a determination that Mendez's failure to notify the insurance company about a potential claim relieves the insurer from liability. Northwest contends that it will be able to overcome Mendez's failure to notify Westchester. We express no view on the factual and legal arguments on that issue briefly described to us by Northwest. We hold only that Northwest should not be precluded by the default of Mendez in the litigation from presenting those arguments and having them adjudicated on the merits.

Id.

On December 22, 2009, this Court gave leave to NWA to file a supplemental motion for summary judgment. (Mins. of Proceedings [Doc. #160].) Thereafter, NWA filed its second motion for summary judgment and Westchester filed a motion to strike NWA's motion for summary judgment. Westchester also moved for this Court to rule on the remainder of its initial motion for summary judgment, which this Court deemed moot after finding Mendez in default.

**II. DISCUSSION**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is

"genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). The Court views all evidence in the light most favorable to the non-moving party. Id.

### A. Westchester's Motion to Strike

Westchester argues that NWA's second motion for summary judgment exceeds the scope of remand from the Ninth Circuit in attempting to raise new issues that never were pleaded by any party. Westchester also argues that the motion for summary judgment is untimely under this Court's scheduling order (Doc. #93). Therefore, Westchester argues the only motion presently before the Court to consider within the scope of the Ninth Circuit's remand is Westchester's motion for summary judgment.

NWA responds that Westchester's motion to strike is really an untimely and improper motion for the Court to reconsider the December 22, 2009 Order granting NWA's request to re-brief its summary judgment motion. In addition, NWA argues that this Court has discretion to amend its own scheduling order and that the Ninth Circuit held that NWA should not be precluded from presenting its arguments against Westchester and having them adjudicated on the merits.

#### 1. Timeliness of Northwest's Motion for Summary Judgment

This Court has discretion to entertain successive motions for summary judgment. Hoffman v. Tonnemacher, 593 F.3d 908, 911 (9th Cir. 2010). A district court is allowed to decide anything not foreclosed by the appellate court's mandate. Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993). It is appropriate for a district court to allow a party to file a second motion for summary judgment if it leads to a speedy and inexpensive resolution of a suit, particularly on an expanded factual record. Hoffman, 593 F.3d at 911.

Here, the Court gave NWA leave to file a new motion for summary judgment following the Ninth Circuit's remand. Given the Ninth Circuit's ruling, giving NWA leave

to file a successive motion with new arguments after remand is appropriate.

### 2. Timeliness of Westchester's Motion to Strike

NWA argues Westchester failed to meet the requirements for a motion to reconsider under Federal Rule of Civil Procedure 59 and granting such a motion is an extraordinary remedy. However, the Court's Order granting NWA's request for an additional sixty days to file a supplemental motion for summary judgment was not a judgment for which Westchester is seeking reconsideration under Rule 59. Westchester's motion is a motion to strike, not a motion for reconsideration. It therefore is not untimely under Rule 59.

### 3. The Scope of Remand from the Ninth Circuit

When a case has been decided and remanded by an appellate court's mandate, the court to which it is remanded must proceed according to the appellate court's mandate and the law of the case as established by the appellate court. Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995). Any issue not disposed of on appeal, either impliedly or expressly, is available for the trial court on remand. Id.; Firth v. United States, 554 F.2d 990, 993-94 (9th Cir. 1977).

Here, the Ninth Circuit held that "[t]he default and the subsequent judgment did not result from a determination that Mendez's failure to notify the insurance company about a potential claim relieves the insurer from liability . . . . [and NWA] should not be precluded by the default of Mendez in the litigation from presenting those arguments and having them adjudicated on the merits." Westchester Fire Ins. Co., 585 F.3d at 1190. Thus, the scope on remand is to determine whether NWA's arguments are able to overcome Mendez's failure to notify Westchester such that Westchester is not relieved of liability to Mendez under the Policy. However, nothing in the Ninth Circuit's opinion suggests that it intended to reverse this Court's holding that NWA could not bring any direct claims against Westchester because direct claims exceed the scope of NWA's intervention.

Therefore, to the extent that either of NWA's arguments in its second motion for summary judgment include direct claims against Westchester, Westchester's motion to strike should be granted as to those claims. NWA makes two arguments in its second motion for summary judgment. First, NWA argues that Westchester cannot assert defenses such as late notice and failure to cooperate under what is known as the compulsory-insurance doctrine. NWA contends that under the compulsory-insurance doctrine, Westchester cannot deny coverage to NWA based on Mendez's failure to give notice because a Clark County Ordinance required Mendez to purchase the Policy for the protection of third parties like NWA. Alternatively, NWA argues that it should prevail even if Westchester is able to assert those defenses because Westchester is unable to show that it was prejudiced by PALS' delay in notice and failure to cooperate.

                a. Northwest's Compulsory Insurance Doctrine Argument

Nevada never has addressed the compulsory insurance doctrine, however, cases from other jurisdictions applying the doctrine all involve direct claims by injured third parties against insurance companies. These cases do not involve the insured using the compulsory insurance doctrine as a defense in a suit for declaratory judgment brought by the insurer. See Royal Indem. Co. v. Olmstead, 193 F.2d 451, 453 (9th Cir. 1952); Allen v. Canal Ins., Co., 433 S.W.2d 352, 354 (Ky. Ct. App. 1968). Typically, these cases involve third parties directly suing the insurance company under the compulsory insurance doctrine after successfully suing the insured. Merchants Indem. Co. v. Peterson, 113 F.2d 4, 5 (3d Cir. 1940); National Indem. Co. v. Simmons, 186 A.2d 595, 596 (Md. 1962); Baldridge v. Kirkpatrick, 63 P.3d 568, 569 (Okla. Civ. App. 2002).

For example, in Royal Indem. Co., the driver of a rental car struck and injured the plaintiff who later sued the rental car driver in state court. 193 F.2d at 452-53. Then the plaintiff sued the insurer of the rental car company in federal court to collect the judgment from the suit against the driver under the compulsory insurance doctrine. Id. at 453. The

8

Ninth Circuit allowed the claim to proceed, stating that "in cases involving compulsory insurance the insurer cannot urge lack of cooperation by the insured as a defense in a suit brought by an injured member of the public." Id.  Likewise, in Baldridge, the plaintiff was injured in an auto accident and obtained a judgment against the other driver in the accident. 63 P.3d at 569.  She then filed a garnishment affidavit against the insurer under the compulsory insurance doctrine. Id.

However, in at least one case the injured third party asserted the compulsory insurance doctrine as a defense in a declaratory judgment brought by the insurer against both the insured and the injured third party. Great Am. Ins. Co. v. Brad Movers, Inc., 382 N.E.2d 623, 625 (Ill. App. Ct. 1978).  In Brad Movers, the third party suffered a loss due to the mishandling of its property by the insured. Id.  The insured obtained a warehouseman's insurance policy in compliance with an Illinois statute that required all warehouse operators to file a bond or obtain insurance as a prerequisite to doing business in the state. Id.  The third party obtained a judgment against the insured and then filed a garnishment action against the insurer. Id.  The insurer then sued both the third party and the insured, seeking a declaratory judgment absolving it of liability to both parties based on the insured's violation of the policy's notice and cooperation provisions. Id.  The insured and the injured third party contended that the public policy behind the compulsory insurance doctrine was "best effectuated by limiting the insurer to an action against the insured for noncompliance with policy conditions, rather than allowing this defense to be asserted against the third party claimant." Id.  The Illinois appellate court held that the public policy behind the statute favored protection of the public against the negligent warehouse operators and disfavored the use of contract defenses by the insurer to avoid paying the innocent third party. Id. at 626.  However, the court held the insured's policy violations still were enforceable against the insured. Id. at 626-27.

///

NWA suffered a loss due to PALS' negligence and obtained a judgment against PALS in a Minnesota state court. It now is seeking to assert the compulsory insurance doctrine directly against Westchester in this litigation, which would exceed the scope of its intervention. NWA's interest in this litigation, as defined by NWA's pleading, is to protect any proceeds Westchester may owe to Mendez. Had Mendez decided to participate in this case, he could not have benefitted from the compulsory insurance doctrine. The compulsory insurance doctrine is designed to protect injured third parties, not the insured. The compulsory insurance doctrine, like the third party beneficiary theory, is a direct claim that NWA theoretically could bring against Westchester, but it has nothing to do with whether Westchester owes any duty to Mendez. The claim exceeds the scope of NWA's intervention. Thus, Westchester's motion to strike is granted as to NWA's argument under the compulsory insurance doctrine, without prejudice to NWA raising this argument as a direct claim against Westchester in other litigation.

### b. Northwest's Prejudice Argument

NWA argues that under Nevada Administrative Code 686A.660(4) ("NAC"), it is an unfair trade practice to deny coverage based upon a non-prejudicial delayed notice of a claim. Nevada never has adopted the notice-prejudice rule, but it has addressed and rejected the rule when raised by the insured against the insurer. Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co., 714 P.2d 562, 564 (Nev. 1986). Indeed, cases from states that apply the rule suggest that Mendez could have raised the notice-prejudice argument against Westchester if he chose to participate in this litigation.

For example, in Alcazar v. Hayes, the insurer obtained summary judgment against the insured due to a failure of the insured to comply with the notice provisions in the policies. 982 S.W.2d 845, 847 (Tenn. 1998). The Tennessee Supreme Court reversed the trial court, holding that once the insurer shows that the insured failed to comply with the notice provisions in the policy, it is presumed that the insurer was prejudiced by the

10

insured's failure to notify, but the insured may rebut this presumption. Id. at 856.

NWA is within the scope of its intervention in making this argument. NWA is protecting its interest in any proceeds that Westchester may owe to Mendez by arguing that Westchester is liable to Mendez regardless of Mendez's failure to comply with the Policy's notification and cooperation provisions because Westchester was not prejudiced by these failures. NWA is not making a direct claim against Westchester, but rather arguing that Westchester is not entitled to summary judgment against Mendez due to the notice-prejudice rule. Therefore, Westchester's motion to strike the notice-prejudice portion of NWA's motion for summary judgment is denied.

**B. Northwest's Motion for Summary Judgment**

NWA argues that Nevada law does not allow Westchester to deny coverage based on a failure to comply with the notice and cooperation provisions in the Policy unless Westchester was prejudiced. NWA contends NAC 686A.660(4) turned Nevada into a notice-prejudice state, overruling prior Nevada case law to the contrary. NWA contends Westchester cannot escape liability to Mendez under the notice-prejudice rule because Westchester was not prejudiced by Mendez's failure to notify Westchester of the claim and subsequent suit by NWA, nor by Mendez's failure to cooperate.

Westchester responds by arguing NAC 686A.660(4) did not overrule prior Nevada case law holding that an insurer does not need to show prejudice when it denies a claim based on the insured's failure to comply with the notification and cooperation provisions of the insurance policy. Westchester contends it is not liable to Mendez because Mendez failed to notify Westchester of both the accident and lawsuit by NWA, and failed to cooperate in both the investigation of the accident and subsequent lawsuit.

Nevada has rejected the notice-prejudice rule. In State Farm Mutual Auto Insurance Company v. Cassinelli, the Nevada Supreme Court held that if an insurance company shows that the insured failed to comply with notice or cooperation provisions of

11

the policy, then the company does not need to show prejudice to deny a claim. 216 P.2d 606, 615 (Nev. 1950).

After <u>Cassinelli</u>, the Nevada Division of Insurance passed a new regulation which states:

> No insurer may, except where there is a time specified in the insurance contract or policy, require a claimant to give written notice of loss or proof of loss within a specified time or seek to relieve the insurer of the obligations if the requirement is not complied with, unless the failure to comply prejudices the insurer's rights.

NAC 686A.660(4). Despite this new regulation, both the Nevada Supreme Court and this Court have not applied the notice-prejudice rule in subsequent cases. <u>Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 714 P.2d 562, 564 (Nev. 1986); <u>S.B. Corp. v. Hartford Acc. & Indem. Co.</u>, 880 F. Supp. 751, 756-57 (D. Nev. 1995). In <u>Star Taxi</u>, the Nevada Supreme Court rejected an argument by the insured that the policy specifically must define notice as a "condition precedent" to coverage to deny coverage based on a lack of notice. <u>Star Taxi</u>, 714 P.2d at 562-63. The policy stated "[t]he insurance provided by this policy is subject to the following conditions," one of the conditions being that the insured "promptly notify" the company of an accident. <u>Id.</u> at 563. The policy also provided that the insured could bring no legal action against the insurer unless the insured complied with the policy's terms. <u>Id.</u> The court held that the policy's language "makes it amply clear that timely notice is a condition of coverage and must be carried out in order to render the insurance company liable under its contract of insurance." <u>Id.</u> at 562. The court also rejected the insured's argument that the insurer must show prejudice before denying coverage for a failure to give notice. <u>Id.</u> at 564. This Court recognized in a subsequent case that nothing in <u>Star Taxi</u> suggested that the Nevada Supreme Court intended to overturn <u>Cassinelli</u>. <u>S.B. Corp.</u>, 880 F. Supp. at 757.

Neither <u>Star Taxi</u> nor <u>S.B. Corp.</u> directly addressed NAC 686A.660(4). However, even after the Nevada Division of Insurance promulgated the regulation, the

12

Nevada Supreme Court upheld the traditional rule articulated in Cassinelli, and this Court must apply existing state law, not predict changes in that law. Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 939 (9th Cir. 2001).

Here, the Policy states that unless all the terms of the Policy are complied with, no person can sue Westchester. One of the Policy's terms was that it be "notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." The Policy's language therefore made it clear that notice was a condition of coverage. Westchester thus does not need to show prejudice to deny coverage and NWA's motion for summary judgment is denied.

### C. Westchester's Motion for Summary Judgment

Westchester argues that it is entitled to summary judgment because Mendez violated the Policy's notice and cooperation provisions. NWA responds by arguing the notice-prejudice rule applies, and Westchester was not prejudiced.

The Nevada Supreme Court construes policies that require notice "as soon as practicable" to mean that the insured must give the insurer notice of an accident or occurrence within a reasonable length of time under the facts and circumstances of each particular case. Am. Fid. Fire Ins. Co. v. Adams, 625 P.2d 88, 89 (Nev. 1981). For example, a seven month delay in providing notice was "as soon as practicable" because of the insured's "good faith belief that no action would be filed against him." Id. In contrast, notice to the insurer of a claim two years after an accident and ten days before a lawsuit against the insured went to trial did not comply with the policy's notice provision. Star Taxi, 714 P.2d at 563. The insured had no valid excuse for failing to provide notice other than it thought that notice was given immediately because it was the insured's company policy to notify the insurer after any accident. Id. The Nevada Supreme Court rejected this argument because the insured could not provide proof of giving notice until two years after the accident. Id.

13

Mendez failed to notify Westchester of the accident for over a year and a half. Mendez then repeatedly failed to provide any assistance in the investigation of the accident, thereby violating the cooperation provisions in the Policy. Finally, Mendez failed to provide Westchester with notice of the NWA lawsuit in Minnesota. Westchester remained oblivious of the suit until NWA notified Westchester that it was going to seek a default judgment. Unlike the insured in Adams, Mendez's actions were not in good faith. NWA provides no reason for the delay in notifying Westchester of the accident and the subsequent lack of cooperation by Mendez. Mendez violated the Policy's notice and cooperation provisions and Westchester therefore has no duty to defend or indemnify Mendez. Westchester's motion for summary judgment is granted.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff Westchester Fire Insurance Company's Motion to Strike (Doc. #167) Intervenor Northwest Airlines, Inc.'s Motion for Summary Judgment is hereby GRANTED in part and DENIED in part. The motion is granted with respect to Intervenor's compulsory insurance argument. The motion is denied with respect to Intervenor's notice-prejudice argument.

IT IS FURTHER ORDERED that Intervenor Northwest Airlines, Inc.'s Motion for Summary Judgment (Doc. #162) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff Westchester Fire Insurance Company's Motion for Summary Judgment (Doc. #168) is GRANTED. Judgment is hereby entered in favor of Westchester Fire Insurance Company and against Phil Mendez, doing business as Professional Aircraft Line Service.

DATED: July 1, 2010.

_____
PHILIP M. PRO
United States District Judge